UNITED STATES DISTRICT COURT
FOR THE SOUTHERN FEDERAL DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| FARMERS INSURANCE COMPANY, INC. § <br> § <br> Plaintiff, § <br> § <br> § Case No. _____ <br> § <br> § <br> PAUL JESSE SCHONIER AND § <br> NICKOLIS PEOPLES, § <br> § <br> Defendants. § | |

## **PLAINTIFF'S ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE JEFFREY V. BROWN:

COMES NOW, Farmers Insurance Company, Inc. ("Farmers"), and files its original complaint for declaratory judgment against Defendants Paul Jesse Schonier ("Schonier") and Nickolis Peoples ("Peoples"), and would show the following:

### **THE PARTIES**

1. Farmers is an insurance company organized under the laws of the State of Missouri and with its principal place of business in the State of Kansas.

2. Schonier is an individual who, at the time of the underlying events, resided at 2115 Eastland Street, League City, Galveston County, Texas (the mailing address listed on the policy of insurance at issue in this matter). As of the date of the filing of this complaint for declaratory relief, Schonier is an inmate at the Larry Gist State Jail in Beaumont, Texas, Texas Department of Criminal Justice Number 02265284. Schonier may be served with process by serving the agent for service of civil process on inmates in the Larry Gist State Jail, Tara Lee, or, alternatively, Tammera Allen, 3295 FM 3514, Beaumont, Texas 77705. Farmers requests a Summons be issued

to Schonier and provided to its counsel of record, so that arrangements can be made for service of process on Schonier via an independent and licensed process server.

3. Peoples is an individual who currently resides at 9015 Blue Crab Drive, Texas City, Texas 77591. Farmers requests the clerk issue a Summons directed to Peoples. Farmers asks that the clerk to forward the Summons directed to Peoples to its counsel of record, so that arrangements can be made for service of process via an independent and licensed process server.

## VENUE AND JURISDICTION

4. Venue for this matter is proper in the Galveston Division of the Southern District of Texas pursuant to 28 U.S.C. § 1391(b)(1), in that Peoples is a resident of Galveston County, and Schonier is a resident of Texas, and a substantial part of the events or omissions giving rise to underlying matter occurred in Galveston County, Texas. 28 U.S.C. § 1391(b)(2). The Court has jurisdiction as complete diversity exists between Farmers, on the one hand, and Peoples and Schonier, on the other hand, and the amount in controversy exceeds $75,000.00, as the underlying lawsuit at issue in which Peoples is the plaintiff and Schonier is a named defendant seeks monetary relief in excess of $1,000,000.00 in damages.

## NATURE OF THIS ACTION

5. This is a declaratory judgment action initiated by Farmers to determine its contractual rights, duties, and obligations (namely, any duty to defend and indemnify) under an Oklahoma homeowners insurance policy issued to Schonier and his wife, Amanda Schonier ("Amanda"), as it may pertain to the civil lawsuit initiated by Peoples as case number 20-CV-0005, styled *Nickolis Peoples v. IHOP Property, LLC d/b/a Propihop, LLC, et al.,* and pending in the 56th Judicial District Court of Galveston County, Texas (the "Underlying Action").

## FACTUAL BACKGROUND

6. The current pleading on file in the Underlying Action is Peoples' original petition, which was filed on January 2, 2020. In the Underlying Action, Peoples asserts the following factual allegations and causes of actions as it relates to Schonier:

### FACTS

14. On or about February 18, 2018, [Peoples] entered upon the IHOP Defendants', RPAI's, and Wang's premises, which is an IHOP restaurant located at 401 FM 2094, Clear Lake Shores, Texas 77565 ("the Property"). The Property is a part of the Clear Lake Shores Shopping Center, which is operated and managed by [RPAI]. [Wang] is the franchise holder of the IHOP restaurant. [Peoples] would show that the premises is owned, occupied, and/or maintained by the IHOP Defendants, [RPAI], and [Wang]. Furthermore, the IHOP Defendants, [RPAI], and [Wang] were responsible for the management, safety, and security of the premises. [Peoples's] purpose on the premises was to purchase goods and services sold by the IHOP Defendants, [RPAI], and [Wang].

15. On the date in question, at around three o'clock in the morning, [Peoples] was eating and celebrating a friend's birthday with a group of friends at the Property. Schonier, who [Peoples] believes was a regular customer at the IHOP, was also eating at the Property with [Amanda]. Schonier, who appeared intoxicated, was being aggressive, loud, and belligerent towards [Peoples] and his friends and made an obscene gesture towards [Peoples]. Schonier was then asked to leave the Property. However, the IHOP Defendants, [RPAI], and [Wang] did not take any measures to ensure that Schonier left the Property and did not call the police. Schonier did not leave the Property and instead returned to his car, where he retrieved a gun. [Peoples], thinking that Schonier had left the Property, went to the front of the restaurant to pay his bill. However, Schonier returned to the restaurant with the gun, opened fire, and shot [Peoples] in the head. Schonier fled the scene but was eventually apprehended and arrested. On May 22, 2019, Schonier was sentenced to five (5) years in prison for aggravated assault.

16. As a result of this incident, [Peoples] sustained critical and life-threatening injuries, as well as emotional damages. Specifically, [Peoples] was in the hospital in critical condition for almost three (3) weeks. He also suffered a brain bleed, a skull

mastoid fracture, and brain injury. After he was released from the hospital, [Peoples] entered a rehabilitation facility for about two (2) months. To this day, P[Peoples] still has trouble using his right arm and hand. [Peoples] also sustained lost wages and loss of earning capacity as a result of the incident.

17.     At all times, the IHOP Defendants, [RPAI], and [Wang] had a duty to protect invitees, including [Peoples], from dangerous persons and the risk of danger. Specifically, the IHOP Defendants, [RPAI], and [Wang] have a duty to use ordinary care to protect invitees, such as [Peoples], from criminal acts of third parties. Moreover, the IHOP Defendants, [RPAI], and [Wang] have the duty to exercise reasonable care to protect their invitees, such as [Peoples], from intentional injuries inflicted by third persons.

18.     The incident and resulting injuries to [Peoples] were due to no fault of his own. [Peoples], as an invitee, should be able to expect that he will not be assaulted while on the IHOP Defendants,' [RPAI's], and [Wang's] Property. [Peoples] contends that the incident in question was caused by a failure on the IHOP Defendants,' [RPAI's], and [Wang's] part to maintain safe premises and/or premises free of criminal activity. Further, [Peoples] contends that the incident in question was caused by the IHOP Defendants,' [RPAI's], and [Wang's] failure to warn of and/or cure the dangerous condition and/or criminal activity.

19.     The IHOP Defendants, [RPAI], and [Wang] extended an open invitation to the public, including [Peoples], to enter the premises. Accordingly, [Peoples] was an invitee to whom the IHOP Defendants, [RPAI], and [Wang] owed a duty to use ordinary care, including the duty to protect and safeguard [Peoples] from dangerous conditions and/or criminal activities on the premises or to warn of their existence. Furthermore, the IHOP Defendants, [RPAI], and [Wang] owed a duty to its invitees, including [Peoples], to provide adequate security at the Property.

20.     While upon the IHOP Defendants,' [RPAI's], and [Wang's] premises, [Peoples] suffered serious bodily injuries as a direct result of the incident. The IHOP Defendants, [RPAI], and [Wang], their agents, servants, and employees knew or, in the exercise of ordinary care, should have known the dangerous situation existed. More specifically, [Peoples] would show the incident in question was caused by the IHOP Defendants,' [RPAI's], and [Wang's] failure to maintain safe premises free from criminal activity. If the premises were secure the danger would not have existed. Furthermore, the IHOP Defendants, [RPAI], and [Wang] failed or refused to provide

proper and adequate security at the Property and failed to prevent dangerous and assaultive activity that injured [Peoples]. The IHOP Defendants,' [RPAI's], and [Wang's] failure to provide such security or other safeguards to their customers created or perpetuated a danger to [Peoples] and others, in that [Peoples] was shot by [Schonier] and sustained significant bodily injury.

21. Prior to [Peoples's] injury, there was such a probability of a harmful event occurring from the criminal acts of a third party that a reasonably prudent person would have foreseen that the conduct just described or some similar event was likely to happen, and would have taken reasonable steps to prevent the occurrence of such an event.

22. The IHOP Defendants, [RPAI], and [Wang] knew, or should have known, that [Schonier] was acting in a manner that was quarrelsome and threatening, or that there was a likelihood [Schonier] may act in such a way, in the presence of other customers. The IHOP Defendants, [RPAI], and [Wang], acting by and through their agents, servants, or employees, knew, or in the exercise of ordinary care should have known or discovered that when [Schonier] began his threatening and assaultive conduct, a situation was developing that was endangering the safety of their invitees, including [Peoples].

23. Though the above was or should have been apparent to the agents, servants, or employees of the IHOP Defendants, [RPAI], and [Wang], they took inadequate steps to protect their customers from the foreseeable criminal acts of third persons. Specifically, they did not ask [Schonier] to leave the Property until the situation had already become dangerous and they did not take any steps to ensure that [Schonier] actually left the Property.

24. Moreover, the nature and character of the IHOP Defendants,' [RPAI's], and [Wang's] Property makes the criminal activity that [Schonier] committed foreseeable. The Property is a twenty-four (24) hour IHOP restaurant. The nature of twenty-four (24) hour restaurants necessitates the need for heightened security measures. For example, in the two (2) years prior to the incident, there had been at least eleven (11) shootings at IHOPs including another one in the Houston area. Thus, the IHOP Defendants, [RPAI], and [Wang], by reason of location, mode of doing business, or observation and/or past experience, should have reasonably anticipated criminal conduct on the part of third persons and have a duty to take precautions against it. The IHOP Defendants, [RPAI], and [Wang], who had the power of control of expulsion, are in the

best position to protect against harm to their invitees. However, the IHOP Defendants, [RPAI], and [Wang] failed to provide any adequate security at the Property on the night of the incident.

25. Furthermore, [Schonier] assaulted and/or battered [Peoples] and caused him significant bodily injury. [Schonier] caused an object to make contact with [Peoples's] person. Specifically, [Schonier] shot a gun at [Peoples] and caused a bullet to enter [Peoples's] head.

26. [Schonier] intentionally, knowingly, or recklessly caused [Peoples] bodily injury. Specifically, [Schonier] intentionally, knowingly, or recklessly shot his gun at [Peoples] intending, at the very least, to cause [Peoples] serious bodily injury.

\*      \*      \*

## CAUSES OF ACTION AGAINST [SCHONIER] ASSAULT & BATTERY/INFLICTION OF BODILY INJURY

38. [Schonier] caused an object to make contact with [Peoples's] person. Specifically, [Schonier] shot a gun at [Peoples] and caused a bullet to enter [Peoples's] head.

39. [Schonier] intentionally, knowingly, or recklessly caused [Peoples] bodily injury. Specifically, [Schonier] intentionally, knowingly, or recklessly shot his gun at [Peoples] intending, at the very least, to cause [Peoples] serious bodily injury.

40. [Peoples's] injuries resulted from [Schonier's] malice, which entitles [Peoples] to exemplary damages under Texas Civil Practice & Remedies Code § 41.003(a).

## CAUSES OF ACTION AGAINST ALL DEFENDANTS GROSS NEGLIGENCE

41. Pleading further, and without waiving the foregoing [Peoples] hereby brings claims against Defendants for gross negligence. [Peoples] incorporates by reference the factual allegations contained previously and otherwise herein. Defendants' acts and omissions, as more fully described above, constituted gross negligence as defined under Texas law, which entitles [Peoples] to exemplary damages under Texas Constitution Article 16, Section 26.

## KNOWN FACTS

7.      After the police arrived at the shooting scene made the basis of and described in the Underlying Action, an initial investigation was conducted resulting in Schonier's arrest for aggravated assault with a deadly weapon. Farmers is informed and believes Schonier ultimately pled guilty to aggravated assault on Peoples and was sentenced to prison for a maximum period of five-years and is eligible for parole in two-and-a-half years. As part of his plea, Schonier executed certain documents in which he voluntarily and freely admitted he was guilty of each and every element of the second degree felony of aggravated assault causing serious bodily injury:

> GUILTY PLEA: Understanding and agreeing to all of the above, I freely and voluntarily plead **GUILTY** and confess my GUILT lo having committed each and every element of the offense alleged in the indictment or information by which I have been charged in this cause and I agree and stipulate that the facts contained in the indictment or information are true and correct and constitute the evidence in this case. . . . .

(emphasis in original)

8.      Based on his guilty plea, the criminal court entered a judgment convicting Schonier of the second degree felony of "aggravated assault causing serious bodily injury" pursuant to Texas Penal Code Section 22.02(a)(1). Inherent in the finding of guilt is the legal determination that Schonier pointed a dangerous weapon – *i.e.*, a pistol – at Peoples, made the conscious decision to pull the trigger while intentionally aiming the weapon at Peoples with the intent to cause serious bodily injury to him, and that such conduct did not constitute or qualify as self-defense.

## THE POLICY

9.      Farmers issued Texas homeowners insurance policy number 99461-02-91 to Schonier (and Amanda), effective January 19, 2018, through March 28, 2018 (the "Policy"). The Policy covers, *inter alia*, damages for which an insured becomes legally liable because of "bodily

injury" caused by an "occurrence," subject to certain exclusions, conditions, and limitations. More specifically, the Policy provides liability coverage as follows:

### COVERAGE E (Personal Liability)

We will pay those damages which an **insured** becomes legally obligated to pay because of:

1. **bodily injury** resulting from an **occurrence**; or
2. **property damage** resulting from an **occurrence**.

At our expense and with attorneys of our choice, we will defend an **insured** against any suit seeking damages covered under Coverage E (Personal Liability), even if groundless, false or fraudulent. Our obligation to defend a suit seeking damages ends once we have paid our applicable **stated limit**. We may investigate and settle any claim or suit seeking damages that we consider appropriate.

10. Additionally, the Policy includes the following potentially applicable exclusions:

Coverage E (Personal Liability), Coverage F (Medical Payments to Others) and **personal injury** coverage, if covered under this policy, do not apply to:

\*          \*          \*

12. **Intentional Acts.**

We do not cover **bodily injury**, **property damage** or **personal injury** which is caused by, arises out of or is the result of an intentional act by or at the direction of any **insured**. This includes, but is not limited to, any intentional act or intentional failure to act by any **insured**. This exclusion applies whether or not:

a. any **insured** mistakenly believes he or she has the right to engage in certain conduct;
b. the injury or damage is sustained by persons or property not intended or expected by any **insured**;
c. the injury or damage is different or greater or of a different quality than that intended or expected;
d. any **insured** did not understand that injury or damage may result;
e. any **insured** knew the intentional act or failure to act was a violation of any penal law;
f. any **insured** was under the influence of any alcohol or

        narcotic;
- g. any **insured** was insane; or
- h. any **insured** is deemed not to have had the mental capacity to form the legal intent to commit the act or omission causing injury or damage.

For purposes of this exclusion, a plea of guilty, no contest, or true in a criminal proceeding, which involves the same acts or activities which are the basis of a claim for damages against any **insured**, shall conclusively bar any **bodily injury**, **property damage** or **personal injury** which arises or results from or caused by such acts or activities.

\*       \*       \*

21. **Punitive or Exemplary Damages, Fines, Penalties or Attorney Fees**

We do not cover punitive or exemplary damages or any amount in the nature of a civil fine or penalty assessed or imposed under any code, statute or regulation or by any court, or any award or assessment of attorney fees. We also do not cover the cost of defense, including attorney fees, related to any such damages, fines or penalties.

11. The Policy contains the following relevant definitions:

    4. **Bodily injury** – under Section II – Liability – means physical harm to the body, including physical sickness or disease, to a person other than **insured**. This includes reasonable required care, loss of services and death that results.

    **Bodily injury** does not include:

        a. psychological or mental injury or effect, including by way of example but not limited to fear, depression, humiliation, anxiety, anguish, shock or distress, unless it arises from actual physical harm to the body of a person;
        b. transmission or exposure of a **communicable disease** by any **insured** to any other person;
        c. Acquired Immune Deficiency Syndrome (AIDS), AIDS related Complex, Human Immunodeficiency Virus (HIV);
        d. any auto-immune disease;

      e.    physical harm to the body from actual, alleged, or threatened corporal punishment, molestation or abuse. For purposes of this coverage, abuse means an act which is committed with the intent to cause harm; or

      f.    any symptom, injury, condition, effect, illness or disease related to subsections a. through e. above, or resulting from a **noxious substance**. A symptom, injury, condition, effect, illness or disease includes by way of example but is not limited to fatigue, insomnia, stomachaches, headaches or ulcers.

*     *     *

25.    **Occurrence** – in Section II – Liability – means:

      a.    an accident which first occurs during the policy period, and which results in **bodily injury** or **property damage**. Repeated or continuous exposure to the same general harmful conditions is considered to be one **occurrence**; or

      b.    the commission of an offense which is first committed during the policy period and which results in **personal injury**. A series of similar or related offenses is considered to be one **occurrence**.

## GROUNDS WHICH PRECLUDE COVERAGE

12.    By the instant action, Farmers contends liability coverage under the Policy does not apply, so as to afford Schonier a defense or indemnity in or as to the Underlying Action, and the damages sought therein are not covered under the Policy for the following reasons:

      a.    <u>Schonier's Shooting of Peoples Does Not Constitute an "Occurrence"</u>

Schonier intentionally took his pistol out of its holster, pointed or aimed it at Peoples, made the conscious decision to pull the trigger, and shot Peoples in the head. All of the actions by Schonier were voluntary and deliberate acts with the clearly foreseeable – if not fully expected – result being bodily injury to Peoples. Schonier's felonious criminal assault on Peoples does not and cannot constitute an "occurrence" as required by the Policy. Accordingly, Farmers has no duty to defend or indemnify him in or as to the Underlying Action.

      b.      <u>The Intentional Acts Exclusion Precludes Coverage</u>

For the same reasons the factual bases of the Underlying Action preclude the existence of an "occurrence" the Intentional Act Exclusion (fully set forth herein) precludes any duty to defend or indemnify Peoples in or as to the Underlying Action.

      c.      <u>Schonier's Guilty Plea Collaterally Estops the Re-Litigation of the "Occurrence" or "Intentional Act" Exclusion Issues</u>

Schonier admitted his guilt in the written plea agreement, which constitutes the full and fair litigation of all issues as to his commitment of a second degree felony of assault with a deadly weapon resulting in serious bodily injury. The guilty plea and stipulation of the facts signed by Schonier, and the affirmative finding of guilt by the court constitute a "full and fair" litigation of all essential facts and issues, which cannot be re litigated in any subsequent civil suit. As such, the shooting of Peoples does not and cannot constitute an "occurrence" or an accident, and does constitute an "intentional act, such that Peoples's injuries are not covered by and are excluded from coverage under the Policy's liability coverage.

      d.      <u>The Policy Excludes Punitive Damages</u>

The Underlying Action seeks exemplary or punitive damages. Any punitive or exemplary damages sought or assessed against Schonier in the Underlying Action are excluded from coverage.

## CAUSE OF ACTION FOR DECLARATORY JUDGMENT

13.    There is an unresolved controversy between the parties as to whether the Policy applies to provide liability coverage for the bodily injury claims asserted by Peoples against Schonier. Pursuant to Section 22.001 of Title 28 of United States Code and Federal Rule of Civil Procedure 57, Farmers seeks a declaration from this Court that it has no duty to defend or indemnify Schonier under the Policy in connection with the Underlying Action, and that Peoples, as a possible third-party judgment-creditor, is precluded from recovering against Farmers under the Policy for damages, if any, assessed against Schonier in the Underlying Action.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Farmers Insurance Company, Inc. prays that Defendants Jesse Paul Schonier and Nickolis Peoples be served with Summons and complaint to appear and answer herein, and that upon final trial hereof, judgment will be rendered declaring that:

a. Plaintiff Farmers Insurance Company, Inc. has no duty to defend Defendant Paul Jesse Schonier in or as to cause number 20-CV-0005, styled *Nickolis Peoples v. IHOP Property, LLC d/b/a PropIHOP, LLC, et al.,* and pending in the 56th Judicial District Court of Galveston County, Texas;

b. Plaintiff Farmers Insurance Company, Inc. has no duty or contractual obligation to indemnify Paul Jesse Schonier in or as to cause number 20-CV-0005, styled *Nickolis Peoples v. IHOP Property, LLC d/b/a PropIHOP, LLC, et al.,* and pending in the 56th Judicial District Court of Galveston County, Texas;

c. Plaintiff Farmers Insurance Company, Inc. has no duty or contractual obligation to pay damages to Nickolos Peoples for any judgment or settlement in or as to cause number 20-CV-0005, styled *Nickolis Peoples v. IHOP Property, LLC d/b/a PropIHOP, LLC, et al.,* and pending in the 56th Judicial District Court of Galveston County, Texas, and which involves Schonier;

d. Farmers recover its taxable court costs herein; and

e. Farmers have such other and further relief to which they are entitled or will ever pray.

Respectfully submitted,

**WALTERS, BALIDO & CRAIN, L.L.P.**


 */s/ Gregory R. Ave*
**GREGORY R. AVE**
State Bar Number 01448900
**JAY R. HARRIS**
State Bar Number 00793907
AveEdocsNotifications@wbclawfirm.com
Meadow Park Tower, Suite 1500
10440 North Central Expressway
Dallas, Texas 75231
Facsimile Number (214) 347-8310
Telephone Number (214) 347-8311

ATTORNEYS FOR PLAINTIFF FARMERS INSURANCE COMPANY, INC.

**FARMERS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT - Page 13**